591 A.2d 568

**Rex Eugene DENNISON**

v.

**STATE of Maryland.**

**No. 1173, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 27, 1991.

Clarence W. Sharp, Asst. Public Defender (Stephen E. Harris, Public Defender), Baltimore, for appellant.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and John L. Scarborough, State's Atty. for Cecil County, Elkton, on the brief), for appellee.

Submitted before ALPERT, ROBERT M. BELL * and FISCHER, JJ.

FISCHER, Judge.

Appellant, Rex Eugene Dennison, was convicted by a jury in the Circuit Court for Cecil County of manslaughter. Subsequently, the trial judge sentenced appellant to ten years in the Division of Correction, and as a "condition of the sentence" and "recommendation of parole," appellant was ordered to pay a public defender fee of $1,000 within one year of release plus the funeral expenses of the decedent.

On appeal, appellant raises the following issues:

1. Did the trial court err in denying appellant's motion to suppress statements?

2. Was there sufficient evidence to support the conviction of manslaughter?

---

* Bell, J., participated in the hearing of the case and in the conference of the case in regard to its decision but was appointed to the Court of Appeals prior to the adoption of the opinion by the Court.

3. Did the trial court properly submit the correct offenses to the jury and supply a proper verdict sheet?

4. Did the trial court err in denying a mistrial and giving a contrary instruction to the jury when appellant was questioned by the State about an alleged theft of a bottle of wine a week before the incident occurred?

5. Did the trial court impose a proper sentence on appellant?

## Facts

In the late afternoon or early evening of July 23, 1989, the victim, Grady Martin, a sixty year old alcoholic, was killed by approximately six blows to the head, neck and upper part of the body administered with a blunt object. Martin, Fred Goudy and appellant, along with others, had been consuming alcoholic beverages in a wooded area commonly referred to as the "Green" across from Howard's Market, a liquor store, near North East, Maryland. The drinking activity began at approximately 1:00 p.m. the afternoon of July 23. The victim was drinking Carstair's 100 proof whiskey while appellant and Goudy were drinking Mogen David wine.

Goudy testified that he had been drinking wine and any other alcoholic beverages available. He stated that when darkness arrived, but before Howard's Market closed, he purchased a six pack of beer. He drank two cans and decided to return to the woods to relieve himself before proceeding back to his living quarters in Maysville. Upon returning to the drinking area in the woods, Goudy found Martin's body. He immediately dialed 911 from a telephone located outside of Howard's Market. The time of the call to 911 was 9:53 p.m. When the police arrived, they found the body lying in a clearing approximately fifty feet into the wooded area. The victim was lying face down, partially on a pink blanket with a pillow over his head and a partially burned, bloodstained log lying next to his body. The police also found Goudy in an intoxicated condition sitting on a guard rail with the partially consumed six pack.

Appellant testified that he began drinking wine in the "Green" at approximately 1:00 p.m. When he first arrived, appellant drank some of Goudy's liquor and later gave Albert Smith money and asked him to buy a pint of wine. Smith purchased the wine for appellant and departed along with others at approximately 2:00 p.m. Appellant, Martin and Goudy stayed to drink. Appellant testified that Martin became angry, brandished a knife, and came toward him and Goudy. Appellant said he took the knife from Martin, struck Martin with his fist and a tree limb. Appellant said that Martin was unhurt when appellant left the "Green" at approximately 3:00 to 4:00 p.m. Appellant was subsequently apprehended in Elkton by the police.

## I.

### Did the trial court err in denying appellant's motion to suppress statements?

On February 9, 1990, over a month prior to the trial, the court conducted a pre-trial suppression hearing. The statement sought to be suppressed was given by appellant to Trooper First Class Michael Gawrych of the Maryland State Police at approximately 1:30 a.m. on July 24, 1989. Trooper Gawrych testified that he began the interview by reading aloud to the appellant his *Miranda*[1] rights from a card which the trooper carried for that purpose. Appellant does not contend that he was not properly advised. The trooper further testified that appellant appeared to be stable, did not have slurred speech, appeared to be alert, and had no trouble with his balance. The trooper stated affirmatively that he made no promises to appellant and did not threaten him in any way.

An oral untaped statement was given first followed by a taped statement. In his statement, appellant contended that the victim came at him with a steak knife, and appel-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

lant used his fists to strike the victim six or seven times. After those blows, the victim was unconscious for a half hour to forty-five minutes, and when he wakened, "[H]e wanted to swing on me so I popped him on the head with that dammed log." Appellant thus admitted to striking Martin once with the log. He stated that he then left the scene, and when he departed, Martin "was still breathing and everything...."

After the statement was taken, the investigators decided to administer a preliminary breath test to appellant. The first reading obtained was .21. The operator administering the test then realized that appellant had been drinking coffee and smoking immediately prior to the test. She then waited twenty minutes and readministered the test. The reading on the second test was .19.

Trooper Gawrych, on cross-examination, testified that he did not detect an odor of alcohol emanating from appellant, did not observe the appellant to have bloodshot eyes, and did not notice appellant to have slurred speech. The trooper did observe, however, that appellant's hands were shaking while holding a coffee cup. Other than that, Trooper Gawrych observed no other signs tending to indicate intoxication.

Hospital records were introduced to show that appellant was admitted to the hospital on July 24, 1989 and discharged on July 27, 1989. The reason for appellant's hospital stay was his need to receive treatment for delirium tremens, an illness causing hallucinations and brought about by excessive consumption of alcohol. Appellant testified that on July 23, 1989 he consumed approximately "three fifths [2] of 20/20 Mogen David" wine. He also testified to drinking a fifth of Thunderbird, but as to all of the wine, the Mogen David and the Thunderbird, "[e]verybody shared it." Appellant further testified that he had not eaten for approximately a week and had been drinking

2. What is commonly known as a "fifth" is a bottle containing one-fifth of a gallon.

alcoholic beverages for the entire week. Appellant stated that he was ill while he was being questioned by the police and was anxious to leave, but the police told him that they could stay all night. When asked whether he knew that he "didn't have to talk," appellant stated "I, I can't say that really I did or really I didn't cause I was too sick. I was just too sick to do anything at that time."

■ The court found that *Miranda* warnings were properly given to appellant and that he knowingly waived his rights and voluntarily gave an oral and a taped statement. With respect to appellant's condition, Judge Cole made findings as follows:

The officer observed him. He was alert. There was no slurring of speech, no trouble with balance and in the officer's opinion he was able to communicate. These are my words not his words, summarizing. The officer said he (appellant) knowingly waived his rights, which the court accepts. Certainly was voluntary in the sense there was (sic) no threats or promises made. Indeed the defendant doesn't contest that. In fact, the defendant also agrees that he understood these rights. He merely said that he was sick and scared and wanted to get out of there. There's no question about him, defendant, not understanding the questioning. He agreed he did.

Hearing the tapes, the Court finds that these tapes indicate to the Court that he understood everything and he answered the questions. He was coherent. There was no slurring of words. There was nothing to indicate to the Court from listening to the tapes, that he was sick or scared or anything. They (sic) were answers made, according to my listening to the tape, by a person calm and collected and able to give an accurate description not only of where he went, but the people he was drinking with and indeed he testified today. His memory was fairly good for a person who is admittedly an alcoholic and there is no question he is an alcoholic. He knew who picked him up, who he talked to, who he was drinking with that day and things like that.... Court does find

that he was an alcoholic and the Court does find he was drinking all week and he drank wine this day, but not to the point that he was drunk or unable to communicate or understand his rights.

Appellant avers that the trial judge erred in finding that the waiver and statements were freely and voluntarily given despite the overwhelming evidence of mental impairment through intoxication. While we are obligated to make an independent constitutional appraisal when a fundamental right is involved, we must also give deference to the trial judge's determinations as to credibility of the witnesses "since we neither heard nor saw them." *Watson v. State,* 282 Md. 73, 84, 382 A.2d 574, *cert. denied,* 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978). We do not believe the trial judge erred in finding that appellant was not so intoxicated as to render his statement involuntary.

## II.

### Was there sufficient evidence to support the conviction of manslaughter?

Appellant submits that the conduct to which he admitted i.e., striking the victim with his fists and one blow with a log, was not the cause of death, particularly since the medical examiner testified that Martin was killed by at least six blows to the head and neck administered by the use of a blunt object. In addition, appellant points out that the victim was observed lying on the ground, apparently asleep between 5:10 p.m. and 6 p.m. According to appellant, it follows that the blows administered by appellant in the mid-afternoon were not the cause of death.

In our review of the sufficiency of the evidence we do not ask whether the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979). Rather, the standard used by an appellate court is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; [emphasis in original]. *State v. Rusk*, 289 Md. 230, 240, 424 A.2d 720 (1981). The State observes that the evidence indicated that appellant struck the victim with his fists several times and "nailed him good with a log." Appellant also told investigators that he had done something bad and knew he had to "get out of Dodge." In our view, this evidence is sufficient to permit a rational fact finder to find beyond a reasonable doubt that appellant killed the victim.

### III.

Did the trial court properly submit the correct offenses to the jury and supply a proper verdict sheet?

■ Appellant complains that his trial counsel requested that a charge of assault with intent to disable, Md.Ann.Code art. 27, § 386 (1987 Repl.Vol.), be submitted to the jury as a lesser included offense of murder. The court declined to do so indicating that the submission of assault with intent to disable would be confusing to the jury. We do not believe the court erred. Since assault with intent to disable requires an intent to disable and murder requires an intent to kill, the elements of the crimes are dissimilar. In *Hagans v. State*, 316 Md. 429, 559 A.2d 792 (1989), the Court of Appeals adopted the elements test to determine which lesser included offenses may be submitted to the fact finder. The elements test means that all of the elements contained in the lesser included offense must also be included in the greater offense to the end that it is impossible to commit the greater offense without also committing the lesser. Since the element of intent in each offense differs, assault with intent to disable is not a lesser included offense of murder. The court did not err.

■ Appellant further complains that the composition of the verdict sheet improperly added felony murder as a separate offense. This error is "harmless" as no inconsist-

ent verdict was returned. *Dorsey v. State,* 276 Md. 638, 648–650, 350 A.2d 665 (1976).

## IV.

Did the trial court err in denying a motion for mistrial?

■ During cross-examination of appellant, the Assistant State's Attorney asked appellant if he remembered being apprehended while attempting to steal a bottle of wine in Howard's Market the Sunday prior to the murder of Grady Martin. Appellant now complains that the court denied his motion for mistrial. Technically, appellant did not move for a mistrial. He moved for a dismissal for prosecutorial misconduct. The court, however, treated the motion as one for mistrial, so we will consider the issue on that basis. It is apparent that the court believed the question was relevant in that it went to appellant's "lack of money." The court decided, however, that the question was too prejudicial to be allowed "on balance." The court gave a curative instruction as follows:

> Ladies and gentlemen of the jury, you are not to consider that statement because it has nothing to do with this. And there's not even any proof that statement, that thing even occurred. And you're not to consider it in any manner in determining guilt or innocence. You're not to use it at all because the State's Attorney shouldn't have asked that question because you'd have to prove it occurred. And there's not proof in this case that it occurred.

■ There was no objection made to the content of the instruction as given. Appellant's objection is, therefore, waived. Md.Rule 4–325. Appellant avers, however, that the foregoing action of the trial judge was insufficient, and only a mistrial or dismissal for prosecutorial misconduct would have removed the possibility of prejudice to appellant. We disagree. It seems apparent to us that the question asked was improper, but the forceful action taken by the trial judge was sufficient to overcome any prejudice

suffered by appellant. It is generally held that the jury can and will follow curative instructions. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974); *Wilson v. State*, 261 Md. 551, 276 A.2d 214 (1971); *Brooks v. State*, 68 Md.App. 604, 515 A.2d 225 (1986), *cert. denied*, 308 Md. 382, 519 A.2d 1283 (1987).

### V.

#### Was appellant properly sentenced?

At sentencing, the State requested that the appellant be committed to the Division of Correction for the maximum sentence permitted—ten years. The appellant's attorney argued that the judge should use discretion and sentence the appellant to a term less than the maximum, as Md.Ann. Code art. 27 § 387 (1987 Repl.Vol.) provides for a penalty of "not more than ten years...." The judge stated that, since a life had been taken, he felt obligated to impose the maximum. The judge further ordered the appellant to pay restitution to the public defender's office for legal fees and restitution for the victim's funeral expenses.

The judge asked appellant's attorney to provide a statement of fees for services the public defender's office provided to appellant. The attorney responded that, due to the duration of the trial, the cost of representation amounted to $1,000. The judge set the fee to be paid the public defender's office at that amount.

When the judge issued the restitution order for funeral expenses, appellant's attorney inquired if the court had the cost figures, the judge replied that he did not yet know the amount.

A sentencing "judge has very broad discretion when imposing sentences and condition of probation." *Brown v. State*, 80 Md.App. 187, 198, 560 A.2d 605 (1989). The discretion is so broad that it has been defined as "virtually boundless." *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981). We hold that the discretion of the judge in ordering

payment for public defender fees (as estimated by appellant's attorney at $1,000) was properly exercised. The order was clearly a condition of the sentence and not a condition of parole.[3] Therefore, the order for restitution of public defender's fees was appropriate.

■ The issue of restitution of funeral expenses for the victim appears to be a two part issue: (1) was the sum indeterminate, and (2) was it a condition of parole? Although the judge did not have the exact figures for the funeral and burial costs[4] before him at the time of the sentencing, the amounts are readily available to the Division of Parole & Probation from the victim's estate and/or third party payor. Therefore, we reject the appellant's argument that the order is open-ended. Additionally, the judge was clear in stating that the restitution order was a condition of the sentence. His statement, "this is the recommendation of parole," may have referred to the presentence investigation prepared by the Division of Parole and Probation, but the judge did not condition parole on the payment of restitution. Therefore, we affirm the order for restitution of funeral expenses.

■ While we have consistently found that the judge possesses great powers of discretion at sentencing, *Brown*, 80 Md.App. at 198, 560 A.2d 605; *Simms*, 65 Md.App. at 691, 501 A.2d 1338, we have also consistently held that the judge must use these powers. In determining a sentence, a judge should consider both the facts and circumstances of the case as well as the defendant's background. *Reid v. State*, 302 Md. 811, 490 A.2d 1289 (1985). Furthermore, the judge cannot decide on what sentence to impose before the

---

3. The sentencing court, of course, may not impose conditions of parole. *Simms v. State,* 65 Md.App. 685, 691, 501 A.2d 1338 (1986).

4. Although funeral and burial costs are not specifically mentioned in Md.Ann.Code art. 27, § 640 (1987 Repl.Vol.), they are within the definition of restitution contained in Md.Cts. & Jud.Proc.Code Ann. § 3–829(c)(iii) (1989 Repl.Vol.), which is analogous.

accused has been afforded the opportunity to allocute. *Kent v. State*, 287 Md. 389, 393, 412 A.2d 1236 (1980).

▇▇▇ Appellant, seizing upon some imprecise wording of the trial judge, avers that the judge incorrectly believed that he was required to impose the maximum penalty of ten years imprisonment for manslaughter. The trial judge stated, "All right. My hands are tied in this case, as far as I can see, you've taken a life, I can only give you ten years basically." We do not believe that the foregoing language means that the trial judge was of the opinion that he could only impose a maximum sentence because a life was taken. What the trial judge said is that in his opinion the maximum sentence was warranted.

▇▇▇ We do, however, find other statements of the trial judge to be more disturbing:

Mr. Thompson: Something less than ten years, something less than the maximum is called for in this case.

The Court: I don't see how, a man died.

Mr. Thompson: Then you're saying that zero to ten means ten?

The Court: Yes. I don't know that I can cut it any less than that. In fact you saved him from getting more time by your excellent representation. He's lucky.

Now if he was second degree I would give him the maximum under second degree. If they found him guilty of first degree, he'd have gotten the maximum under first.

He's already ahead of the game.

Mr. Thompson: The legislator (sic) said zero to ten.

The Court: That's right, and when they kill people I always go right at the maximum.

Mr. Thompson: We take exception to that, naturally.

The Court: When you take a life—I can't think of anything worse. If I don't given (sic) him the maximum, I'm remiss in my duties.

The foregoing discourse makes it abundantly clear that the trial judge has predetermined that whenever a conviction results from a death the only penalty to be imposed is the maximum provided. This attitude is the antithesis of discretion. We agree with the State that the trial judge was aware that he had the discretion to impose a sentence of less than the maximum. But, as we see it, knowing that one has discretion and forever refusing to exercise such discretion has the same practical effect as not exercising discretion because one is not aware of the ability to exercise discretion. Either way there is an impermissible failure to exercise discretion. As we observed in *Hart v. Miller*, 65 Md.App. 620, 627, 501 A.2d 872, *cert. denied*, 305 Md. 621, 505 A.2d 1342 (1986), "When, as in the present case, the trial court recognizes its right to exercise discretion but then declines to exercise it in favor of adhering to some consistent or uniform policy, it errs."

In *Henry v. State,* 273 Md. 131, 150, 328 A.2d 293 (1974), the duty of the sentencing judge is set forth as follows:

It is elementary that in passing sentence in a given case the sentencing should be fashioned, to the best of the sentencing judge's ability, to the facts and circumstances surrounding the crime and the individual then being sentenced. Each defendant in each case is unique in the proper sense of that often misused word.

Since the sentencing judge refused to employ the discretion conferred upon him by the legislature in imposing sentence in this case, the remedy is resentencing. *Rome and Modo v. State,* 236 Md. 583, 589, 204 A.2d 674 (1964). We are, therefore, vacating the sentence and remanding this case for resentencing.

JUDGMENT AFFIRMED; SENTENCE VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR RESENTENCING.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY CECIL COUNTY.