REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2757

September Term, 2013

_____

CALVIN JEROME HALL

v.

STATE OF MARYLAND

_____

Krauser, C.J.
*Zarnoch,
Reed

JJ.

_____

Opinion by Reed, J.

_____

Filed: September 30, 2015

*Zarnoch, Robert A., J., participated in the conference of this case while an active
member of this Court; he participated in the adoption of this opinion as a retired,
specially assigned member of this Court.

A jury in the Circuit Court for Frederick County convicted Calvin Jerome Hall, appellant, of first-degree burglary and theft of $10,000 to under $100,000 in value. During trial, he was acquitted with respect to a charge of malicious destruction of property. He was sentenced to 20 years of imprisonment, with all but 15 years suspended, followed by three years of supervised probation for first-degree burglary. In addition, he was ordered to pay restitution totaling $12,902.04. Appellant timely appealed and presents three questions for our review, which we rephrased:[1]

1. Was the evidence sufficient to support the guilty verdict reached by the jury on the burglary charge?

2. If properly preserved for appeal, did the trial court abuse its discretion when it certified Trooper Dwyer as an expert?

3. Did the trial court abuse its discretion when it ordered Mr. Hall to pay restitution pursuant to the burglary conviction even though he was previously acquitted on the malicious destruction charge?

For the following reasons, we answer the first question in the affirmative and the second and third questions in the negative. Therefore, we affirm the judgments of the circuit court.

---

[1] Appellant presented the following questions:

1. Was the evidence sufficient to support Mr. Hall's burglary conviction?

2. Did the trial court abuse its discretion when it permitted Trooper Dwyer to testify as an expert, when he was not sufficiently qualified?

3. Did the trial court err when it ordered restitution that related to the malicious destruction charge of which Mr. Hall was acquitted?

1

On November 10, 2011, Ms. Martha Goodenough left her residence at 8049 Stone Ridge Drive in Frederick, Maryland, sometime between 7:45 and 7:50 a.m. to go to work. Such was her usual morning routine. When she arrived home from work around 3:40 p.m., she immediately noticed that her front screen door was propped open. Then, upon opening her garage door, she noticed that the door leading into the house from the garage was also open, even though she had closed and locked it before she left for work. She entered her house and discovered that a number of her personal items were missing, including two televisions, a computer, a printer, three Coach purses, and multiple boxes of jewelry. She also discovered that her front door had been kicked in in such a way that it broke her doorframe. She called 9-1-1 and the police reported to the scene.

On the same day, at approximately 5:45 p.m., appellant sold several pieces of Ms. Goodenough's jewelry to Frazier's Pawn Shop in Martinsburg, West Virginia. He provided the assistant manager of the pawn shop with his driver's license, which contained the name "Calvin J. Hall" and the address 2203 Lamp Post Lane, Frederick, Maryland. Frazier's Pawn Shop recorded this information in its daily transactions report, which it shares with the local police department in Martinsburg, West Virginia. Appellant returned to Frazier's Pawn Shop several times during the next two weeks and sold a total of nine pieces of Ms. Goodenough's jewelry.

After learning from the police department in Martinsburg, West Virginia, that appellant had pawned jewelry matching the description of that which was stolen from Ms. Goodenough's house, Detective Joseph McCallion of the Frederick County Sheriff's

Office subpoenaed appellant's telephone records. Those records were given to Senior Trooper Dave Dwyer of the Maryland State Police, who, over appellant's objections, was allowed to testify as an expert on reading and mapping cell phone data. He testified at trial regarding one of the maps he had made using appellant's cell phone data. That map indicated the cell towers appellant's cell phone had communicated with in the window of time in which the burglary occurred. It also showed where those towers were located in relation to Ms. Goodenough's residence. Trooper Dwyer testified that on the day of the burglary, appellant's phone "hit" off a cell tower near Ms. Goodenough's residence at 12:11 p.m., 12:52 p.m., and 1:09 p.m. He further testified that all three of those "hits" corresponded with the side of the cell tower closest to Ms. Goodenough's residence, and that calls and texts made earlier in the day "hit" off towers that were farther away.

The jury found that the aforementioned circumstantial evidence was sufficient to find appellant guilty of first-degree burglary and theft of $10,000 to under $100,000 in value. After sentencing, appellant filed a timely appeal.

DISCUSSION

I. SUFFICIENCY OF THE EVIDENCE

A. Parties' Contentions

Appellant argues that the State "failed to prove beyond a reasonable doubt that [he] was the person who broke and entered Ms. Goodenough's home." Appellant argues that the two main pieces of circumstantial evidence linking him to the crime – namely, the fact that he had pieces of Ms. Goodenough's jewelry in his possession a short time after the burglary and that his cell phone "hit" off a cell tower near Ms. Goodenough's home around

3

the time of the burglary – were insufficient to prove his guilt beyond a reasonable doubt. He notes that the State provided no direct evidence in the form of eyewitness testimony or fingerprint evidence linking him to the scene of the crime. Appellant acknowledges that in *Molter v. State*, 201 Md. App. 155 (2011), we held that the "unexplained possession of recently stolen goods . . . permits the trier of fact to infer that the possessor was the burglar." *Id.* at 168. However, he argues that more circumstantial evidence was presented against Molter than was presented against him. Therefore, he argues that there was insufficient evidence to support an inference that he committed the burglary.

The State argues that there was sufficient evidence to support the jury's verdict. The State points to evidence that appellant sold several pieces of Ms. Goodenough's jewelry to a pawn shop on the evening of the burglary, the fact that he sold additional pieces of Ms. Goodenough's jewelry to the same pawn shop over the course of the next two weeks, and the fact that his cell phone "hit" off a cell tower near Ms. Goodenough's home between noon and 1:00 p.m. on the day of the burglary to support its contention that the jury's verdict was based on sufficient evidence. In response to appellant's argument based on our decision in *Molter*, the State argues that evidence that an individual was in possession of recently stolen property is sufficient to support an inference that that individual was the burglar. The State argues that even if *Molter* does require additional evidence, the jury's verdict should still be upheld because additional evidence was presented. The additional evidence the State points to is the fact that appellant was in possession of the stolen property on *the very same day* as the burglary and the fact that his cell phone records place him in the vicinity of Ms. Goodenough's home when the burglary is thought to have occurred.

4

**B. Standard of Review**

We recently laid out the applicable standard of review for determining whether sufficient evidence exists to support a conviction on appeal:

> The test of appellate review of evidentiary sufficiency is whether, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Coleman,* 423 Md. 666, 672 [33 A.3d 468] (2011) (quoting *Facon v. State,* 375 Md. 435, 454 [825 A.2d 1096] (2003)). The Court's concern is not whether the verdict is in accord with what appears to be the weight of the evidence, "but rather is only with whether the verdicts were supported with sufficient evidence—that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offense charged beyond a reasonable doubt." *State v. Albrecht,* 336 Md. 475, 479 [649 A.2d 336] (1994). "We 'must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference.' " *Cox v. State,* 421 Md. 630, 657 [28 A.3d 687] (2011) (quoting *Bible v. State,* 411 Md. 138, 156 [982 A.2d 348] (2009)). Further, we do not "'distinguish between circumstantial and direct evidence because [a] conviction may be sustained on the basis of a single strand of direct evidence or successive links of circumstantial evidence.'" *Montgomery v. State,* 206 Md. App. 357, 385 [47 A.3d 1140 (2012)] (quoting *Morris v. State,* 192 Md. App. 1, 31 [993 A.2d 716] (2010)), *cert. denied,* 429 Md. 83 [54 A.3d 761] (2012).

*Kyler v. State,* 218 Md. App. 196, 214-15 (2014) (quoting *Donati v. State,* 215 Md. App. 686, 716, *cert. denied,* 438 Md. 143 (2014)).

**C. Analysis**

The statute in effect on November 10, 2011, defined first-degree burglary as the "break[ing] and enter[ing] [of] the dwelling of another with the intent to commit theft or a

5

crime of violence." Md. Code Ann., Crim. Law § 6-202 (2002 Repl. Vol.) (amended 2014). Looking at the evidence in the light most favorable to the prosecution and giving deference to all reasonable inferences drawn by the jury, we hold that appellant's first-degree burglary conviction is upheld because there was sufficient evidence to support the jury's findings.

Appellant argues that his possession of Ms. Goodenough's jewelry on the day of the burglary and the presence of his cell phone near Ms. Goodenough's house was insufficient evidence for the jury to find him guilty of first-degree burglary. We disagree. The fact that no direct evidence was produced linking appellant to the crime does not mean that no reasonable jury could have found him guilty beyond a reasonable doubt. That all the evidence against him was circumstantial is irrelevant. As we have repeated time and time again, "[a] conviction may be sustained on the basis of a single strand of direct evidence or successive links of circumstantial evidence." *Kyler*, 218 Md. App. at 215 (citations omitted). Therefore, the only inquiry is whether the circumstantial evidence presented to the jury was sufficient for "any rational trier of fact . . . [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

As appellant stated in his brief, the jury was presented with evidence that he was "[in] possession of some of the stolen items after the crime and [that] . . . his cell phone [was] in the general vicinity of a cell tower near Ms. Goodenough's home on the day of the crime." Additionally, the jury heard the testimony of Detective Joseph McCallion that, based on his experience investigating thefts and burglaries, individuals who steal personal

6

property frequently sell the property out-of-state in order to avoid detection by local police. He further testified that during the investigation he searched appellant's phone number on Craig's List and found several postings for the sale of electronics during the months of October and November of 2011. Based on these successive links of circumstantial evidence, a reasonable jury could have inferred that appellant was guilty.

In *Molter v. State*, we reiterated that "[p]ossession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference . . . that the possessor was the thief . . . *or, where the theft was compounded, that the possessor was also the burglar.*" 201 Md. App. 155, 169 (2011) (quoting *Brewer v. Mele*, 267 Md. 437, 449 (1972)) (emphasis in original). We went on to explain that the validity of such an inference has been upheld by the Court of Appeals.[2] Molter was seen by an eyewitness at the burglarized home on the day of the burglary and the homeowner testified that the appellant was one of only two people who knew that he was going to be out of town on the day the burglary took place. *Molter*, 201 Md. App. at 161. Appellant argues that similar evidence is necessary to support his conviction. We disagree. *Molter* does not stand for the proposition that a minimum amount of evidence is necessary in addition to the possession of recently

---

[2] *Molter*, 201 Md. App at 170 (quoting *Grant v. State*, 318 Md. 672, 680–81 (1990)):

> Ordinarily, the unexplained exclusive possession of recently stolen goods permits an inference that the possessor is the thief . . . and *when it is shown that the property was stolen as a consequence of a breaking, the trier of fact may further infer that the thief was involved in the breaking.*

(emphasis in original).

stolen property in order to support an inference that the possessor was the thief or the burglar. Rather, it stands for the proposition that the unexplained possession of recently stolen property permits the jury to infer guilt *by itself*.

In the end, our job is to determine whether a reasonable jury could have determined, based on all of the evidence viewed in the light most favorable to the prosecution, that all of the elements of the crime were satisfied. It is not even necessary that we agree with the inferences made by the jury. *Smith v. State*, 415 Md. 174, 184 (2010). All we concern ourselves with is whether their inferences were reasonable. *Kyler*, 218 Md. App. at 214 (2014) (internal citations omitted). Employing that analysis, we hold that the evidence presented against appellant was sufficient to fairly convince the jury of his guilt beyond a reasonable doubt.

## II. TROOPER DWYER'S EXPERT TESTIMONY

### A. Parties' Contentions

The State offered Senior Trooper Dave Dwyer of the Technical Surveillance Unit of the Maryland State Police as an expert in "cell phone and cell tower data reading, and utilizing the information to plot on a map to create a historical record of a cell phone's location at the time of communications." Appellant argues that when defense counsel stated that Trooper Dwyer was "not an expert," a proper objection was thereby made to the trial court's determination that he was sufficiently qualified to provide expert testimony. Thus, appellant argues that that issue is preserved for appeal and that Trooper Dwyer's qualifications as an expert fall short of what we have required in *Coleman-Fuller v. State*, 192 Md. App. 577 (2010), and *Wilder v. State*, 191 Md. App. 319, *cert. denied*, 415 Md.

8

43 (2010). Appellant argues that a cell tower engineer or an employee of his cell phone company would have been sufficiently qualified to testify as an expert on data plotting, but Trooper Dwyer was not.

The State, on the other hand, argues that defense counsel's objections at trial were insufficient to preserve the issue of Trooper Dwyer's expert qualifications for appeal. The State asserts that the objections defense counsel made before Trooper Dwyer's testimony were on the grounds that an expert was not required in order to map appellant's cell phone data because a mere lay witness could have done so. The State contends that defense counsel's final objection at the end of Trooper Dwyer's testimony was made on the same grounds as his earlier objections because he began by saying "I'm [going to] *renew* my objection to . . . Trooper Dwyer being admitted as an expert." Therefore, the State asserts that appellant is precluded from raising a different objection (namely as to whether Trooper Dwyer was sufficiently qualified to be an expert) on appeal. However, if we decide that defense counsel's objections were sufficient to preserve this issue for appeal, then the State's alternative argument is that the trial court did not abuse its discretion by admitting Trooper Dwyer as an expert.

## B. Standard of Review

Maryland Rule 4-323 provides, in relevant part:

> **(a) Objections to Evidence.** An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs.

9

In addition, Maryland Rule 5-103(a) states:

> **(a) Effect of Erroneous Ruling.** Error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling, and
>
> (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rule; or
>
> (2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer on the record or was apparent from the context within which the evidence was offered. The court may direct the making of an offer in question and answer form.

While a party need not state the specific grounds for objection unless directed to do so by the court, the Court of Appeals has nonetheless held that "where a party voluntarily states his grounds for objection even though not asked, he must state all grounds and waives any not so stated." *von Lusch v. State*, 279 Md. 255, 261 (1977). Therefore, our ability to review the issue of Trooper Dwyer's expert qualifications is dependent upon whether a proper objection was made at trial.

If the issue has been preserved for appeal, we will review the admission of Trooper Dwyer's testimony under an abuse of discretion standard. *See Brown v. Contemporary OB/GYN Assocs.*, 143 Md. App. 199, 252 (2002). In *Brown*, we noted that "admissibility of expert testimony is within the sound discretion of the trial court, and its action will seldom constitute a ground for reversal." *Id.* (quoting *Pepper v. Johns Hopkins Hosp.*, 111 Md. App. 49, 76 (1996), *aff'd*, 346 Md. 679 (1997)) (internal quotations and citations omitted). We further noted that "[t]he trial court's determination is reversible [only] if it is

10

founded on an error of law or some serious mistake, or if the trial court clearly abused its

discretion," *Brown*, 143 Md. App. at 252 (quoting *Pepper*, 111 Md. App. at 76-77) (internal

quotations omitted), and that "[a]n appellate court will only reverse upon finding that the

trial judge's determination was both manifestly wrong and substantially injurious." *Brown*,

143 Md. App. at 252 (quoting *Commercial Union Ins. Co. v. Porter Hayden Co.,* 116 Md.

App. 605, 641, *cert. denied,* 348 Md. 205 (1997)) (internal quotations omitted).

## C. Analysis

We first turn to whether defense counsel's objections were sufficient to preserve the

issue of Trooper Dwyer's expert qualifications for appeal. After the State moved to admit

Trooper Dwyer as an expert in "cell phone and cell tower record data reading, and utilizing

that information to plot on a map to create a historical record of a cell phone's location at

the time of communications," and prior to performing *voir dire* on Trooper Dwyer, defense

counsel made a preliminary objection:

> THE COURT: Mr. Frawley, would you like to *voir dire* on
> that?
>
> . . .
>
> [Defense counsel]:Your Honor, I'm going to object . . . at this
> point . . . because the State just made the case that he's not an
> expert. An expert's purpose is to clarify information that is
> cloudy, that could be cloudy to a jury. All, according to Mr.
> Shoemaker, all this trooper's going to testify to is that he
> looked at a charge, he looked down one column, he looked
> down another column and he was able to then pinpoint
> something on a map, which, if the State provides that evidence
> to the jury, they can do themselves. And I know this, because
> I could figure out how to do this and I'm not an expert in this.
>
> . . .

[Defense counsel]: I'm sorry. The State is simply trying to introduce . . . cell phone records through an expert that they didn't want to use the cell phone company for. This is not expert testimony that he's doing. He's not, he isn't doing any analysis. A DNA expert uses scientific methods to create an answer to a question that none of us can do. If I can figure out these cell phone records than [sic] any member of this jury can as well. And, therefore, this is not expert testimony and this testimony is no [sic] subject to expert testimony.

The court overruled that objection, and defense counsel proceeded to perform *voir dire* on the witness. At the end of *voir dire*, defense counsel made a second objection:

[Defense counsel]: Trooper, I'm going to rephrase the question . . . [I]f I had these documents would I be able to calculate where a cell phone tower is?

. . .

[Trooper Dwyer]: With the training yes, you should be able to do that.

[Defense counsel]: I would have the training to do it. Is that what your testimony is?

[Trooper Dwyer]: It would help you along the way, yes, to understand them.

[Defense counsel]: Would I have to have the training?

[Trooper Dwyer]: Not necessarily, no.

[Defense counsel]: Okay. So, your testimony is if given the right records I could figure our [sic] to do this?

. . .

[Trooper Dwyer]: My opinion, yes.

. . .

12

> [Defense counsel]: At this point I would . . . argue that he's not an expert. He's just said that I could do this.
>
> THE COURT: Well . . .
>
> [Defense counsel]: And I'm not an expert.
>
> [Prosecutor]: Your Honor, that's not the standard. He has special training and experience [sic] do this.
>
> THE COURT: It's whether it would be helpful to the jury. Objection's overruled.
>
> . . .
>
> THE COURT: Any other questions, Mr. Frawley?
>
> [Defense counsel]: No, Your Honor, thank you.
>
> THE COURT: Do you object?
>
> [Defense counsel]: Yes, Your Honor.
>
> THE COURT: Objection's overruled. He's received.

Finally, at the conclusion of Trooper Dwyer's testimony, defense counsel made one last objection:

> [Defense counsel]: I'm gonna' renew my objection to not, Trooper Dwyer being admitted as an expert. Uh, the State intended to, called him as an expert on the functions of cell phone towers and yet he didn't even know the size of a cell. He doesn't know what he needs to know as an expert. Your Honor, I would ask that he be not designated as an expert and that all of his testimony be stricken and an [sic] curative instruction being told to the jury that he's not to be considered an expert in cell phones.

Again, his objection was overruled.

Because defense counsel voluntarily stated grounds for each objection, he waived any not so stated. *See von Lusch v. State*, 279 Md. at 261. Therefore, in order for us to review whether the trial court abused its discretion by admitting Trooper Dwyer as an expert witness, defense counsel must have objected at least once on the grounds that Trooper Dwyer was insufficiently qualified as an expert. We now turn to the record to make that determination.

It is clear that defense counsel's first two objections were based solely on the ground that a lay witness would have been more appropriate than an expert witness to create a map from appellant's cell phone records. For example, following his first objection, defense counsel made a lengthy argument that the testimony the State desired to elicit from Trooper Dwyer could have been given by almost anyone. Then, defense counsel supported his post-*voir dire* objection by stating: "He's just said that I could do this." A fair reading of the transcript indicates that the first two objections were based solely on defense counsel's belief that almost any layperson could have taken the stand and plotted the coordinates from appellant's cell phone records onto a map. If no other objections had been made, then the issue of whether Trooper Dwyer was properly qualified as an expert would not be preserved for our review.

However, the third objection, which was made at the conclusion of Trooper Dwyer's testimony, was sufficient to preserve the issue for appeal. In support of his final objection, defense counsel stated that Trooper Dwyer "doesn't know what he needs to know as an expert" because he "[was called] as an expert on the functions of cell phone towers and yet he didn't even know the size of a cell." He then asked the court to provide the jury with a

14

"curative instruction . . . that he's not to be considered an expert in cell phones." The State argues that it did not call Trooper Dwyer as an expert on "the functions of cell phone towers," but rather on "cell phone and cell tower record reading." The State asserts that this supposed misstatement by defense counsel regarding the subject area of Trooper Dwyer's expertise should preclude appellant from raising the issue before us of whether Trooper Dwyer was properly qualified as an expert. We disagree. Defense counsel had just listened to Trooper Dwyer's entire testimony and stated to the court that Trooper Dwyer "doesn't know what he needs to know as an expert." That statement was sufficient to put the trial court on notice that the ground for the objection was that Trooper Dwyer lacked the qualifications necessary to testify as an expert.

Still, in order for the issue to be preserved for appeal, the objection must have been made in a timely manner. The State does not contend that defense counsel's final objection was untimely, but only argues that it was made on "different [grounds] than the claim made on appeal." Nevertheless, we find it necessary to address the issue of timeliness.

Maryland Rule 4-323(a) states that "[a]n objection to the admission of evidence shall be made *at the time the evidence is offered* or as soon thereafter as the grounds for objection become apparent." (Emphasis added.) While we have recognized that "there is no bright-line rule to determine when an objection should be made," *Prince v. State*, 216 Md. App. 178, 193-94, *cert. denied*, 438 Md. 741 (2014), it still "must come quickly enough to allow the trial court to prevent mistakes or cure them in real time." *Id.* at 194. This requirement serves to prevent a party from treating the trial as a sport and waiting until "it may be too late for the other party to recover . . . [before] seek[ing] to strike

15

evidence." *Perry v. State*, 357 Md. 37, 77 (1999). Whether a party had good cause for delay is a factor to consider regarding whether an objection was timely. *Id.*

Here, when Trooper Dwyer first took the stand, defense counsel was seemingly unaware of our holdings in *Wilder* and *Coleman-Fuller* that expert testimony is required to introduce evidence of cell phone data plotting. This is likely the reason why he ardently objected before Trooper Dwyer's testimony on the grounds that lay opinion testimony was more appropriate. He did not "'sit back' until it was too late," *Prince v. State*, 216 Md. App. 178, 194, *cert. denied*, 438 Md. 741 (2014), but rather objected to Trooper Dwyer's qualifications immediately after the grounds became apparent to him on cross-examination when he asked Trooper Dwyer whether he knew the size of a cell, and Trooper Dwyer responded that he did not. Therefore, defense counsel fulfilled the requirement of Rule 4-323(a) that an objection be made "as soon as the grounds for objection became apparent." He also objected in enough time for "the trial court to . . . cure [the mistake] . . . in real time," *Prince*, 216 Md. App. at 194, which it could have done by striking Trooper Dwyer's testimony from the record and giving a curative instruction to the jury. For these reasons, we find that defense counsel's final objection was timely made, and properly preserved for appeal. We now turn our attention to whether the trial court abused its discretion by admitting Trooper Dwyer as an expert in cell phone record mapping.

We first addressed this issue in the cases of *Wilder v. State*, 191 Md. App. 319 (2010), *cert. denied*, 415 Md. 43 (2010), and *Coleman-Fuller v. State*, 192 Md. App. 577 (2010). In *Wilder*, the State called a detective to testify as a lay witness and map the defendant's location at the time a shooting occurred using the defendant's cell phone

16

records. *Wilder*, 191 Md. App. at 347. We ordered a new trial after we held that cell phone record mapping may only be admitted through expert testimony:

> Following *Ragland*, the Court of Appeals has reiterated that "opinions based on a witness's 'training and experience . . . should only [be] admitted as expert testimony, subject to the accompanying qualifications and discovery procedures.'" *Johnson*, 408 Md. at 225, 969 A.2d 262 (quoting *Ragland*, 385 Md. at 709, 870 A.2d 609). Hanna's description of the procedures he employed to plot the map of Wilder's cell phone hits was not commonplace. Because his explanation of the method he employed to translate the cell phone records into locations is demonstrably based on his training and experience, we conclude that he should have been qualified as an expert under Md. Rule 5–702, and that the State was obliged to fulfill its discovery obligations under Md. Rule 4–263(b)(4) (2006). The trial court ought not have permitted Hanna to offer lay opinion testimony about the cell site location, and to describe the map created based on the cellular telephone records.

191 Md. App. at 368. In *Coleman-Fuller*, the State likewise called a detective as a lay witness, this time to map the defendant's location during and after a murder. *Coleman-Fuller*, 192 Md. App. at 612. Relying on our holding in *Wilder* that cell phone data plotting may only be admitted through expert testimony, we explained:

> Patently, the testimony of Detective Childs is equivalent with that of the detective in Wilder. Similar to the detective in *Wilder*, utilizing the data from the cell phone records, Detective Childs rendered an opinion on appellant's location at the time of the calls, stating that the phone records were consistent with appellant's presence in the vicinity of the murder around the time it happened. From the cell phone records, he testified that he was able to determine whether the location of individuals was consistent with their statements to police and their testimony. Neither Detective Childs nor the detective in *Wilder* were qualified as experts, but rather, stated that their training was the result of certification from the cell phone company. Under our holding in *Wilder*, it was clearly error for the court to admit this evidence without expert

17

> testimony. On remand, this evidence may only be introduced through a witness qualified as an expert.

*Id.* at 619. Therefore, it is clear that in the present case the State did what was required by calling Trooper Dwyer as an expert witness rather than a lay witness to map appellant's cell phone data. The issue, then, becomes whether the trial court abused its discretion when it certified Trooper Dwyer as an expert. We hold that it did not.

Maryland Rule 5-702, which governs expert testimony, states:

> Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

We have already explained in detail that expert testimony is required – much less appropriate – to plot cell phone data onto a map. Therefore, whether the trial court abused its discretion under Rule 5-702 depends on whether Trooper Dwyer was "qualified as an expert by knowledge, skill, experience, training, or education." Appellant argues he was not so qualified because he did not at a minimum possess the qualifications of the witness in *Wilson v. State*, 195 S.W.3d 193 (Tex. App. 2006), a case that we described in *Wilder* as one involving a "description of the witness's credentials and experience [which] merits our review." 191 Md. App. at 365. In *Wilson*, the State of Texas "called Sprint employee Danko as the custodian of Wilson's cellular phone records . . . [to testify] as an expert regarding the interpretation of those records based on her training and experience." *Id.* at

18

365 (quoting *Wilson*, 195 S.W.3d at 200). Appellant contends that "[n]othing suggests that this Court intended that qualifications less than those possessed by Danko would be sufficient to qualify someone as an expert in cell phone tracking." We disagree. In fact, nothing in those opinions suggests that we intended to enumerate specific qualifications that a witness must at a minimum possess before being qualified as an expert on cell tower data plotting.

In *Wilder*, we held that "the prosecution . . . [must] offer expert testimony to explain the functions of cell phone towers, derivative tracking, and the techniques of locating and/or plotting the origins of cell phone calls using cell phone records." *Wilder*, 191 Md. App. at 365. We considered that while some states required expert testimony to plot the origin of cell phone calls, others did not. *Id.* at 364-67. We sided with the states that required this testimony to come in through an expert because otherwise parties could offer "testimony based on specialized knowledge, education, or skill . . . [but] avoid the notice and discovery requirements of [Rule 5-702]." *Id.* at 362 (quoting *Ragland*, 385 Md. at 725). This, we noted, would have the effect of "blur[ring] the distinction between [Rule 5-701 (governing opinion testimony by lay witnesses) and Rule 5-702]." *Id.* This is why we ultimately concluded in *Wilder* that the law enforcement officer "should have been qualified as an expert under Md. Rule 5–702, and that the State was obliged to fulfill its discovery obligations under Md. Rule 4–263(b)(4)(2006)." 191 Md. App. at 368. We came to the same conclusion in *Coleman-Fuller*: "On remand, this evidence may only be introduced through a witness qualified as an expert." 192 Md. App. 577, 619 (2010).

19

Our holding that expert testimony is required in order to introduce evidence relating to which cell tower a cellular phone communicated with at a given time was affirmed by the Court of Appeals in *State v. Payne*, 440 Md. 680 (2014), the controlling case on this subject. In that case, Detective Edwards of the Baltimore County Police Department provided lay opinion testimony that the defendant's cell phone communicated with certain cell towers on the night a murder took place, thus putting the defendant in the vicinity of the crime. *Payne*, 440 Md. at 701. The Court of Appeals determined that "Detective Edwards had to have relied on 'knowledge, skill, experience, training or education.'" *Id.* (quoting *Ragland,* 385 Md. at 725). Therefore, his was expert testimony governed by Rule 5-702 rather than lay opinion testimony governed by Rule 5-701. *Payne*, 440 Md. at 702. Because the State called him as a lay witness at trial, the Court of Appeals vacated the judgment and ordered a new trial. *Id.* at 719. The Court of Appeals did not, however, determine whether Detective Edwards possessed the "knowledge, skill, experience, training, or education" necessary to be qualified as an expert.

Nor did we determine in *Wilder* or *Coleman-Fuller* whether the law enforcement officers who testified in those cases possessed the "knowledge, skill, experience, training, or education" necessary to be qualified as an expert. In *Coleman-Fuller*, we noted that "[n]either Detective Childs nor the detective in *Wilder* were qualified as experts, but rather, stated that their training was the result of certification from the cell phone company." 192 Md. App. 577, 619 (2010). This was to say that neither detective was admitted as an expert by the trial court, even though they both referred to the training that was the basis of their respective testimonies. The present case is easily distinguished in that Trooper Dwyer was

20

admitted as an expert. Appellant asks the court to hold that Trooper Dwyer, because he is a law enforcement officer, could not have testified as an expert in cell phone data plotting. We decline, given his training and experience.

In State's Exhibit 57, Trooper Dwyer provided his training and experience in deciphering and plotting cell phone records, which includes: having been assigned to the Maryland State Police Technical Surveillance Unit since 2003, a 24-hour training program with the FBI Cellular Analysis Survey Team (CAST), two cellular tracking courses with Harris Corporation totaling 56 hours, and a 40-hour course with Digital Receiver Technology, Inc. Furthermore, Trooper Dwyer testified on direct examination that he had been plotting and mapping cell phone tower data as a part of his regular duties with the technical surveillance unit for the past ten years and that he had experience plotting the records of appellant's cellular carrier, T-Mobile. In our opinion Trooper Dwyer's training and experience was more than sufficient to qualify him as an expert. In fact, Trooper Dwyer had more training and experience than a detective who was admitted as an expert to testify on cell phone data mapping in *Robinson v. State*, 368 S.W.3d 588 (2012). In that case, the Court of Appeals of Texas (the same court that rendered the *Wilson* decision that is central to appellant's argument) held that a detective with "four years of experience working in the criminal intelligence unit and [a] . . . training course . . . in the use of cell phone tracking" was qualified to give expert testimony similar to that which was given by Trooper Dwyer. *Id.* at 601. The detective in *Robinson* had six fewer years of experience in the technical surveillance unit and much less exposure to training courses than Trooper Dwyer. Trooper Dwyer was sufficiently qualified to testify as an expert. For these reasons,

21

the trial court did not abuse its discretion under Rule 5-702 when it permitted him to testify as an expert on cell tower data reading and plotting said data on a map.

## III. RESTITUTION

### A. Parties' Contentions

Appellant contends that $4,225.00 of the $12,902.04 in restitution he was ordered to pay constitutes an illegal sentence. The amount he objects to is the portion of the restitution order that relates to the damage done to Ms. Goodenough's front door during the break-in. He argues that the State lost its ability to seek those damages when the court granted his Motion for Judgment of Acquittal on the malicious destruction of property charge. Because the malicious destruction of property charge was based solely on the damage done to the front door, he argues, the court was not authorized to turn around and order him to pay restitution for that same door upon his burglary conviction.

The State argues that restitution for the damage to the front door was a lawful sentence because that damage was a "direct result" of the first-degree burglary of which appellant was convicted. The State contends that the mere fact that appellant was acquitted of the malicious destruction of property charge is inconsequential because malicious destruction of property is "merely 'incidental'" to first-degree burglary. The State argues that they charged appellant with two crimes that directly resulted in the same damage to Ms. Goodenough's front door. Therefore, the State asserts that appellant's conviction on one of those charges (first-degree burglary) was independently sufficient to justify the portion of the restitution order at issue.

22

## B. Standard of Review

It is well-established that "[t]rial judges are vested with broad discretion in sentencing." *Ridenour v. State*, 142 Md. App. 1, 11 (2001). However, sentences are subject to appellate review on three bases. These are: "(1) whether the sentence constitutes cruel or unusual punishment or violates other constitutional requirements; (2) whether the sentencing judge was motivated by ill-will, prejudice or other impermissible considerations; and (3) whether the sentence was within statutory limits." *Gary v. State*, 341 Md. 513, 516-17 (1996). The dispute between the parties in this case revolves around whether the order of restitution issued by the sentencing court was within the limits imposed by statute. Upon review, it is our role to determine whether the sentencing court abused the discretion provided to it by the applicable sentencing statute.

## C. Analysis

Maryland Code, Criminal Procedure Article § 11-603 states:

> (a) *Conditions for judgment of restitution.* – A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act, if:
>
> (1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased[.]

This statute gives the sentencing court the ability to order restitution, if it so chooses, whenever a crime "direct[ly] results" in, *inter alia*, property being damaged. Therefore, we must determine whether the damage to Ms. Goodenough's front door was a "direct

23

result" of appellant's commission of first-degree burglary. For the following reasons, we find that the front-door damage was in fact a direct result of the burglary.

The jury found appellant guilty of first-degree burglary. An element of that crime is the "break[ing] and enter[ing] [of] the dwelling of another." Md. Code Ann., Crim. Law § 6-202 (2002 Repl. Vol.) (amended 2014). Clearly appellant's act of breaking and entering Ms. Goodenough's home directly resulted in her front door and door frame being damaged. Without needing to elaborate any further, it appears obvious that the sentencing court's order of $4,225.00 in restitution to cover the damage that was done to the front door was within the discretion afforded him by the sentencing statute.

However, appellant's main argument is not that the front-door damage was somehow unrelated to the burglary. Rather, appellant argues that his acquittal on the malicious destruction of property charge precludes any restitution relating to the front door because the front door damage was the sole basis for that charge. He calls our attention to two cases: *Walczak v. State*, 302 Md. 422 (1985), and *Silver v. State*, 420 Md. 415 (2011), *cert. denied*, 132 S.Ct. 1039, 181 L.E.2d 765 (2012). Walczak was charged with robbery with a deadly weapon of two separate victims. *Walczak*, 302 Md. at 424. The State agreed to drop one of the charges; Walczak was only convicted of robbing one of the victims with a deadly weapon. *Id.* Then, at sentencing, he was ordered to pay restitution as to both victims, *id.*, but the Court of Appeals held that "the trial court exceeded its statutory authorization in sentencing Walczak to pay restitution to the victim of a crime of which he was not convicted." *Id.* at 433. *Silver* involved a similar order of restitution. In that case, the Silvers were charged with three counts of animal cruelty relating to three different

24

horses. *Silver*, 420 Md. at 419.  Although they were only convicted on one of the three counts, the sentencing court ordered restitution as to all three horses. *Id.*  Likewise, only the portion of the restitution order relating to the one horse that was the subject of the Silvers' conviction was upheld on appeal. *Id.* at 430.

Neither *Walczak* nor *Silver* apply to the facts at hand.  In both of those cases, each individual charge related to a unique victim or piece of property.  Here, the same piece of property (namely Ms. Goodenough's front door) was a subject of both the malicious destruction of property charge and the first-degree burglary charge.  That the malicious destruction of property charge was dropped did not negate the pertinence of the front door to the burglary charge.

Therefore, neither *Walczak* nor *Silver* provide grounds to overrule the portion of the restitution order appellant challenges.  We further hold that the entirety of the restitution order issued by the sentencing court was within the statutory limits.

**JUDGMENTS OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**